IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | Criminal No. 1:07-cr-197 |
| v. | § | |
| | § | JUDGE RON CLARK |
| FLORENCE UBAK-OFFIONG | § | |

## ORDER ON RULE 29 MOTION

Defendant was tried for Medicare fraud (Counts II - V) and for illegally paying remuneration (kickbacks) for referrals of Medicare beneficiaries (Counts VI - VII). After the Government presented its case-in-chief and rested, Defendant moved for judgement of acquittal, asserting that the Eastern District of Texas was not a proper venue in which to try the charges made in the indictment. Viewed in the light most favorable to the Government, no evidence presented before the Government initially rested indicated that the referrals were made or delivered in this District, that any payment was made or sent to this District, or that there was any other connection to this District.  While the medicare beneficiaries who were provided unnecessary equipment by Defendant lived in many states and in this District, at the time the Government initially rested it had introduced no evidence that any of the illegally referred beneficiaries resided in this District. The court declines the Government's invitation to assume that each referral was for at least one beneficiary living in the Eastern District of Texas and grants Defendant's motion as to Counts VI and VII.

1

## I. Background

Defendant was charged in Counts I through V of executing or attempting to execute a scheme to defraud the Medicare program in violation of 18 U.S.C. §1347.  The scheme involved providing unneeded wheelchairs, or inexpensive scooters in lieu of wheelchairs,  to Medicare beneficiaries.  She was charged in Counts VI and VII of paying remuneration for referrals of beneficiaries in  violation of the anti kickback provision of 42 U.S.C. §1320a-7b(b)(2)(a).  Count I was dismissed before trial because the beneficiary identified in that count had died before trial.[1]

The evidence presented before the close of the Government's case, viewed most favorably to the Government, established that in 2002 Defendant was certified as a durable medical equipment (DME)  provider.  She opened Champion Medical Supply as the sole proprietor, operating out of her home in Sugarland, Texas.  She later moved to Richmond, Texas.  These are both cities near Houston, and both are located in the Southern District of Texas.

The Medicare number of each Medicare beneficiary identified in Counts II through IV was obtained, usually in connection with an inquiry as to whether the beneficiary would like a motorized wheel chair.  The beneficiary's name and Medicare number were submitted to Medicare on a form known as a Certificate of Medical Necessity (CMN) for a power wheelchair.  Inaccurate information about the beneficiary's need for a wheelchair was entered on the form.  A physician's signature was forged on the form, and the physician's UPIN number (a unique identifying number assigned to each physician) was entered on the form.  A false  prescription form  printed with the name of the physician,  prescribing a motorized wheelchair,

---

[1] Defendant alleges he was dismissed because he resided in the Southern District of Texas; however, this is not relevant to the analysis here.

and bearing the doctor's forged signature, would also be submitted. Medicare would then approve the wheelchair and associated accessories and pay about $6,000 to Defendant.[2]

The evidence submitted before the Government rested also established that Defendant received an unknown number of "referrals" of unspecified information about unidentified beneficiaries living in undisclosed locations. One, or perhaps more, of these came from Emmanuel Akpan, who operated his business in Dallas. One, or perhaps more, of these came from Veronica Enebong, who operated her business in Houston. Dallas is located in the Northern District of Texas, and Houston is located in the Southern District.

Checks to these individuals were written by Defendant in the Southern District. There was no evidence that they were sent outside of the Northern or Southern Districts. When the Government rested, one might surmise that any information "referred" was received by the

---

[2]The court has to admit to some disappointment. The Government established that in 2002 and 2003, Medicare approved some 30,000 DME providers in the City of Houston alone. Leaving aside the question of why anybody thought this horde of DME providers was suddenly needed, the evidence demonstrates that Medicare approved payment of millions of dollars to these businesses without oversight. Defendant operated her business out of her home in Texas. She was paid hundreds of thousands of dollars for wheelchairs "prescribed" for individuals living around the country, based on CMNs supposedly signed by doctors living in distant states. For example, although living in Texas, Defendant was paid for wheelchairs with accessories she sent to Michigan and Louisiana based on CMNs and prescriptions bearing the UPIN number and forged signature of Dr. Buscher, a *dermatologist* practicing in Connecticut. *See* Gov. Ex. 3C. The court notes that as early as 1997, state officials described to members of the Texas House of Representatives the potential use by government health programs of computerized fraud detection software, similar to that developed and used by credit card companies to detect unusual purchase patterns that could indicate a card has been stolen. Evidently, the limitless resources of the American taxpayer made such modern cautionary measures unnecessary for our federal health care programs five years later.

Defendant at Sugarland or Richmond: in other words, in the Southern District.  There was certainly no evidence that she received such referrals while in the Eastern District of Texas, nor that either Akpan or Enebong was in this District when giving the referrals.  There was no evidence that whatever was "referred" pertained to anyone or anything located in the Eastern District.[3]

Defendant operated Champion Medical Supply until 2004, when Medicare informed her that complaints about the wheelchairs had been made and demanded a return of certain payments.  Defendant paid back more than $130,000, and apparently ceased operations soon thereafter

Eventually, Medicare commenced investigations (with appropriately impressive code names) in the Southern and Northern Districts of Texas.  Individuals, operating on a larger scale than Defendant, were identified.  Some were prosecuted while others, including Akpan and Enebong, fled the country.  At some point Defendant's activities finally came to the attention of the Government, and agents went to her home in Sugarland, Texas (located just outside of Houston, in the Southern District).  A subpoena resulted in the production of documents, and she was indicted in the Eastern District of Texas on October 17, 2007.

Prior to trial Defendant moved to dismiss, and alternatively to transfer, on the ground of improper venue.  The court denied the motion. After the Government presented its case-in-chief and rested, Defendant moved for judgement of acquittal, asserting that the Eastern District of

---

[3] After the Government rested, Defendant testified that Enebong referred the beneficiaries identified in Counts II-V to her. However, the court must limit its review of evidence in the record at the time the Government initially rested because Defendant made her motion for judgment of acquittal at that point and the court reserved its ruling.  *See* Fed. R. Civ. P. 29(b); *United States v. Bethurum*, 343 F.3d 712, 715 (5th Cir. 2003).

Texas was not a proper venue in which to try the charges made in the indictment. The court reserved its ruling. After all the evidence was submitted, Defendant renewed her motion. Prior to submitting the case to the jury, the court denied the motion as to Counts II through V. The court reserved its ruling on the motion as to Counts VI and VII, and submitted those counts to the jury with an instruction on venue, and a special interrogatory concerning venue on each of those counts. The jury found Defendant guilty on all counts and found that the offenses charged in Counts VI and VII were "begun, continued, or completed" in the Eastern District of Texas.

## II. Analysis

The right to a trial on criminal charges in the proper venue is a matter of public policy, protected by not one, but two, provisions of the Constitution. U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI; *see United States v. Cabrales*, 524 U.S. 1, 6, 118 S.Ct. 1772, 1775 (1998). "Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18. The exception pertinent to this case provides, "[A]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of or prosecuted in any district in which such offense was *begun, continued, or completed*." 18 U.S.C. § 3237(a) (emphasis added).

    1. Counts VI-VII

The nature of the crime and the location of the acts constituting the crime determine proper venue. *Cabrales*, 524 U.S. at 6-7, 118 S.Ct at 1776. The portion of 42 U.S.C § 1320a-7b(b)(2)(a) at issue in this case makes it a crime to pay, or offer to pay, remuneration for

referring an individual for the furnishing of an item for which payment may be made under a Federal health care program.  The crime is complete when the payment, or offer to pay, is made, even if the referral might have been made anyway, and even if the referral never results in a profit to the person making the payment.  *See, e.g., United States v. Miles,* 360 F.3d 472, 479-480 (5th Cir. 2004)(to obtain a conviction, the Government must show that the Defendant "(1) knowingly and willfully made a payment or offer of payment, (2) as an inducement to the payee, (3) to refer an individual, (4) to another for the furnishing of an item or service that could be paid for by a federal health care program"); *United States v. Lahue*, 261 F.3d 993, 1002-04 (10th Cir. 2001)(one, but not the only, purpose of the payment must be to induce referrals.).

  Viewed in the light most favorable to the Government, by the time the government rested there was evidence in the record that the Defendant had received some kind of referral, about one or more unidentified potential beneficiaries, from Akpan and Enebong, and had paid Akpan and Enebong money.  There was a check to Akpan evidently written in the Southern District of Texas and sent to Akpan in the Northern District.  There was a check to Enebong, evidently written and delivered in the Southern District.  The case agent said Defendant had admitted she had received "referrals" from Akpan and Enebong.  There was not a scintilla of evidence that any of this had occurred in the Eastern District, that these particular referrals pertained to anybody in the Eastern District, nor that these particular events had in any way affected the Eastern District.

  The Government argued that because venue is proper in this District as to Counts II through V, it would be convenient to try Counts VI and VII here at the same time.  Counts VI and VII charge the same Defendant as Counts II through V, and some of the same facts underlie all of the charges.  The fact that Defendant committed other crimes in the Eastern District of Texas

does not justify trial here of offenses begun, continued, and completed in the Northern or Southern Districts. *See e.g., United States v. Morgan*, 393 F.3d 192, 196 (D.C. Cir. 2004)(Defendant who received stolen federal property in Maryland cannot be tried for that crime in the District of Columbia where the property was stolen by someone else to be delivered to him). The charges are not inextricably intertwined. The Government's convenience does not justify depriving Defendant of her Constitutional right to insist on trial of Counts VI and VII in a proper venue.

The Government also asserts that its evidence shows that Defendant was processing fraudulent claims for beneficiaries across the country. The Government argues it is possible that whomever Akpan and Enebong referred might have resided in the Eastern District. The requirement that a Defendant be tried in the proper venue is an important Constitutional right, with practical implications. Even though the Government must establish venue by only a preponderance of the evidence, speculation that there might be a connection to the Eastern District is not sufficient to meet this burden.

### 2. Counts II-V

Defendant's Rule 29 motion as to Counts II through V was denied orally at trial. It is worth comparing the venue facts pertaining to those counts that were established when the Government initially rested, with the evidence concerning Counts VI and VII.

By the time the Government initially rested, it was uncontested that the four beneficiaries identified in Counts II through V lived in cities in the Eastern District of Texas. A motorized wheelchair or scooter had been delivered to each of them, in their respective homes in the Eastern District, by Defendant's business, Champion Medical Supply.

In each case, the CMN and prescription submitted by Champion Medical bore the forged signature of a doctor who had never seen the beneficiary. Champion Medical had been paid by Medicare for each wheelchair or scooter delivered to these beneficiaries in the Eastern District.

Again, the nature of the crime and the location of the acts constituting the crime determine proper venue. *Cabrales*, 524 U.S. at 6-7, 118 S.Ct at 1776. 18 U.S.C. § 1347 criminalizes a scheme to defraud by false pretenses and representations. The scheme may be ongoing, but each complete execution of the scheme, not each act, is a separate offense. *United States v. Hickman*, 331 F.3d 439, 445-446 (5th Cir. 2003). Here, the Government charged and proved that information about beneficiaries living in the Eastern District, including their names and Medicare numbers, was used to submit fraudulent claims. There was evidence that Defendant billed Medicare for expensive wheelchairs and then delivered cheap motor scooters to the beneficiaries at their homes in the Eastern District.

Depending on exactly when payment was made in relation to delivery of the equipment by Defendant, the offenses charged in Counts II through V of the indictment were continued or completed in the Eastern District of Texas. This distinguishes these counts from Counts VI and VII, and from cases in which venue was held to be improper because the crime charged was committed in one district, and the case was filed in another. Looking only at the evidence submitted by the Government before initially resting, venue was proper as to Counts II through V in the Eastern District of Texas.

The other question that arises in connection with Counts II through V is Defendant's request for a jury instruction on venue as to these counts. The Government had the burden of proving venue by a preponderance of the evidence. It is error to refuse an instruction on venue

when the trial testimony "*puts venue in issue* and the defendant requests the instruction." *United States v. Winship*, 724 F2d 1116, 1125 (5th Cir. 1984)(emphasis added).  In order to decide what is properly in issue and what instructions to give the jury, the court will look at all of the evidence, not just what was in the record when the Government initially rested.

By the close of all evidence, it was uncontested that Defendant had used information about the beneficiaries living in the Eastern District to submit CMN forms to Medicare and then had caused the equipment to be delivered to the Eastern District.   Defendant did not contest these facts, but rather affirmed them through her own testimony and that of the witnesses she called.  Her allegation that she did not know the forms were forged does not raise an issue as to the connection to the Eastern District and does not put venue in issue.  It was in no way unfair or unconstitutional for her to answer these particular charges here.

IT IS THEREFORE ORDERED that Defendant Florence Ubak-Offiong's motion for judgment of acquittal is GRANTED as to Counts VI and VII.  The motion and renewed motion for judgement on Counts II, III, IV, and V are DENIED.

So **ORDERED** and **SIGNED** this **17** day of **January, 2008.**

_____
Ron Clark, United States District Judge